STATE FARM FIRE & CASUALTY COMPANY
v CORBY ENERGY SERVICES, INC

Docket No. 267266. Submitted June 7, 2006, at Lansing. Decided July 11,
2006, at 9:00 a.m.

State Farm Fire & Casualty Company, as the subrogee of Leethel
Neal, brought an action in the Oakland Circuit Court against
Corby Energy Services, Inc., and Level 3 Communications, Inc.
The action sought recovery for damage to Neal's home that
resulted when Corby allegedly damaged an unmarked water main
belonging to the city of Detroit while installing a fiber optic
conduit. Corby filed a notice of nonparty fault claiming that the
city was responsible, and the plaintiff amended its complaint to
include the city as a defendant. The city moved for summary
disposition on several grounds, including governmental immunity.
The court, Gene Schnelz, J., denied the motion, and the city
appealed.

The Court of Appeals *held*:

The trial court erred when it determined that the plaintiff's
suit against the city was not barred by the governmental tort
liability act (GTLA), MCL 691.1401 *et seq*. The city is immune
from tort liability if the tort claim arises from the city's exercise of
a governmental function, including the city's operation of its water
and sewerage department, unless a statutory exception applies.
The trial court apparently concluded that the act for the protection
of underground facilities (the MISS-DIG act), MCL 460.701 *et seq*.,
created an exception to governmental immunity. While the Legis-
lature may create additional exceptions to governmental immu-
nity in statutes other than the GTLA, waiver or abrogation of the
immunity granted under the GTLA requires an express statutory
enactment or a necessary inference from the statute. The MISS-
DIG act imposes various notification requirements in connection
with certain construction activities, such as the construction that
occurred in this case. The only section of the MISS-DIG act, MCL
460.714, that imposes direct liability on a party for failing to meet
the obligations imposed by the act omits public agencies, such as
the city, from its coverage. This indicates a legislative intent to
insulate public agencies from liability under the act rather than to

abrogate governmental immunity. Indirect references in the MISS-DIG act to civil remedies do not require an inference that the act waives or abrogates the governmental immunity of a public agency that, like the city, is also a public utility for purposes of the act. Because no exception to governmental immunity found within the GTLA properly applies to the facts of this case, the trial court should have granted the city's motion for summary disposition.

Reversed and remanded for entry of summary disposition for the city.

GOVERNMENTAL IMMUNITY — EXCEPTIONS — PUBLIC UTILITIES — MUNICIPAL CORPORATIONS — UNDERGROUND UTILITY FACILITIES.

The MISS-DIG act, which provides for the protection of underground facilities and imposes notification requirements in connection with certain construction activities, does not waive or abrogate the governmental immunity conferred by the governmental tort liability act on a public agency that is also a public utility (MCL 460.701 *et seq.*, 691.1407[1]).

*The Everhart Law Firm, P.C.* (by *Edward J. Everhart*), for State Farm Fire & Casualty Insurance Company.

*Harvey Kruse, P.C.* (by *James Sukkar* and *Julie E. Nichols*), for Corby Energy Services, Inc.

*Secrest Wardle* (by *Janet Callahan Barnes*) for Level 3 Communications, Inc.

*John E. Johnson, Jr.*, Corporation Counsel, and *Joanne D. Stafford* and *Eric B. Gaabo*, Assistant Corporation Counsel, for the city of Detroit.

Before: SMOLENSKI, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM. Defendant/cross-plaintiff, city of Detroit (the City), appeals as of right the trial court's order denying its motion for summary disposition. We reverse and remand.

This lawsuit arises out of the 2002 failure of a water main owned by the City. In March 1999, defendant Level 3 Communications, Inc. (Level 3), hired defendant Corby Energy Services, Inc. (Corby), through a third party, to install fiber optic conduit in Southfield and Farmington Hills. During this installation, Corby allegedly damaged an unmarked water main owned by the City. The damaged water main corroded over time and eventually failed. As a result of this failure, the home of plaintiff Leethel Neal was damaged by flooding.

Plaintiff State Farm Fire & Casualty Company (State Farm), as Neal's subrogee, filed the present lawsuit.[1] In August 2005, the City moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). After the trial court denied the motion, the City appealed as of right. See MCR 7.203(A)(1); MCR 7.202(6)(a)(v).

On appeal, the City argues that the trial court erred when it determined that plaintiff's suit against the City was not barred by the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* We agree.

This Court reviews de novo decisions on motions for summary disposition. *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by immunity granted by law. *Id.* In order to avoid summary disposition pursuant to MCR 2.116(C)(7), a plaintiff must plead facts in avoidance of immunity. *Mack v Detroit*, 467 Mich 186, 199; 649 NW2d 47 (2002). A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence, which, if submitted,

---

[1] State Farm originally named Corby and Level 3 as defendants. However, after Corby filed a notice of nonparty fault claiming that the City was responsible for the damage, State Farm amended its complaint to include the City as a defendant.

must be considered. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

This Court also reviews de novo questions of statutory interpretation. *Ostroth v Warren Regency, GP, LLC*, 474 Mich 36, 40; 709 NW2d 589 (2006). The goal of statutory interpretation is to give effect to the Legislature's intent as expressed in the statutory language. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). "If the language is unambiguous, 'we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.' " *Id.*, quoting *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

Pursuant to MCL 691.1407(1), "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." The City, as a "political subdivision," MCL 691.1401(b), is a "governmental agency" for purposes of governmental immunity. MCL 691.1401(d). Therefore, absent the applicability of a statutory exception, the City is immune from tort liability if the tort claim arises from the City's exercise of a governmental function. MCL 691.1407(1). A " '[g]overnmental function' is an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(f); see also *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 134; 545 NW2d 642 (1996). Municipalities, such as the City, are authorized under Michigan's Constitution and by statute to operate public utilities such as the City's water and sewerage department. Const 1963, art 7, § 24; MCL 117.4f(c). Hence, the City is entitled to

immunity from tort liability for actions undertaken in the operation of its water and sewerage department unless a statutory exception applies. *Fane, supra* at 74.[2]

In the present case, the trial court concluded that the City was not entitled to governmental immunity. The trial court explained:

> [T]here's obviously a question of fact as [to] whether the lines were actually marked. And I do feel that the Miss Dig Statute does create a duty of the City to mark the lines when requested and it does allow for civil damages against the city which acts as a public utility.

From this statement, it appears that the trial court did not rely on any of the exceptions to governmental immunity stated in the GTLA.[3] Rather it concluded that the act for the protection of underground facilities, see MCL 460.701 to MCL 460.718 (hereinafter the MISS-DIG act or the Act), established an exception to the general rule that municipalities are entitled to immunity from tort liability when performing a governmen-

---

[2] We reject State Farm's contention that the marking of the water main, as required by MCL 460.708, did not constitute operation or maintenance of the water line. Construing the term "governmental function" broadly, as we must, see *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 614; 664 NW2d 165 (2003), we conclude that the prevention of accidental damage to the City's water system through notification is within the scope of the water department's operations. Consequently, the steps taken to comply with the duties imposed on public utilities by MCL 460.708 qualify as a "governmental function" within the meaning of MCL 691.1401(f).

[3] In its brief on appeal, the City contends that the trial court also erroneously determined that the proprietary function exception to governmental immunity applied. See MCL 691.1413. Although the trial court did make an indirect reference to the proprietary function exception, it did not appear to rely on it. However, to the extent that the trial court concluded that the proprietary function exception to immunity applied, we conclude that this was error. See *Davis v Detroit*, 269 Mich App 376, 379; 711 NW2d 462 (2006) (holding that the operation of Detroit's water department "is not a proprietary activity.").

tal function. Therefore, we shall examine whether the trial court correctly concluded that the MISS-DIG act created an exception to the general immunity provided by the GTLA.

Although the GTLA proclaims that it contains all the exceptions to governmental immunity, the Legislature remains free to create additional exceptions, either within the GTLA or another statute. *Ballard v Ypsilanti Twp,* 457 Mich 564, 569; 577 NW2d 890 (1998).

> This is so because the Legislature, in enacting a law, cannot bind future Legislatures. *Malcolm v East Detroit,* 437 Mich 132, 139; 468 NW2d 479 (1991), citing *Harsha v Detroit,* 261 Mich 586; 246 NW 849 (1933). As a result, it remains free to amend or abolish governmental immunity by creating exceptions to it, either within the GTLA, or in the context of another statute. [*Id.*]

However, immunity under the GTLA " 'may not be held to have been waived or abrogated except that result has been accomplished by an express statutory enactment or by necessary inference from a statute.' " *Id.* at 574, quoting *Mead v Pub Service Comm,* 303 Mich 168, 173; 5 NW2d 740 (1942). Whether an express statutory enactment creates an exception to governmental immunity is resolved by reference to the language of the statute. *Ballard, supra* at 574.

Pursuant to the MISS-DIG act, an association of public utilities is created for mutual receipt of notification of certain types of construction activities that may affect underground facilities. See MCL 460.707; see also MCL 460.701(a) (defining "association" to mean "the MISS-DIG utilities communications programs"). In addition to the creation of the association, the MISS-DIG act imposes various notification requirements on "per-

sons," "public agenc[ies]," and "public utilit[ies]," as those terms are defined in the Act.[4] MCL 460.701 provides in relevant part:

> (b) "Person" includes an individual, partnership, corporation, association, or any other legal entity. Person does not mean a public agency.

> (c) "Public agency" means the state, a city, village, township, county, or any other governmental entity or municipality.

> (d) "Public utility" means ... a public agency, other than the state transportation department, owning public service facilities for supplying water, light, heat, gas, power, telecommunications, sewage disposal, storm drains, or storm water drainage facilities.

Pursuant to MCL 460.701(c), the City is a public agency for purposes of the MISS-DIG act. Further, because it owns public service facilities for supplying water and sewage disposal, the City's water department is also a public utility. MCL 460.701(d). Accordingly, the City's water department is subject to the duties imposed by the Act on public agencies and public utilities.

Although the MISS-DIG act imposes duties on governmental entities such as the City, at no point does the Act specifically address governmental immunity. The Act also does not establish a general cause of action for breaches of the duties it imposes. Instead, the only liability imposed by the Act is for harms caused by a "person" who damages underground facilities. MCL 460.714 provides:

---

[4] See MCL 460.704 (requiring public utilities to file a list with each county listing the places where the utility has underground facilities); MCL 460.705 (requiring persons or public agencies that intend to engage in certain excavation activities to notify the association before commencing those activities); MCL 460.708 (requiring public utilities to inform a person or public agency intending to engage in certain excavation activities of the approximate location of their underground facilities).

> In a civil action in a court of this state, when it is shown by competent evidence that damage to the underground facilities of a public utility resulted from excavating, tunneling, drilling or boring procedures, or demolishing operations, or the discharge of explosives, as described in [MCL 460.703], and that the person responsible for giving the notice of intent to excavate, tunnel, demolish, or discharge explosives failed to give notice, or the person did not employ hand-digging or failed to provide support, the person shall be liable for the resulting damage to the underground facilities, but the liability for damages shall be reduced in proportion to the negligence of the public utility if it fails to comply with [MCL 460.708].

This section clearly does not impose liability on public utilities for a failure to give proper notice under MCL 460.708. Instead, it imposes liability on a "person" if the underground facilities of a public utility are damaged by the activities described in MCL 460.703 and the "person" responsible for giving the notice prescribed by MCL 460.705 or MCL 460.707 failed to give notice or the "person did not employ hand-digging or failed to provide support . . . ." MCL 460.714. However, the public utility's recovery is reduced "in proportion to the negligence of the public utility" if the public utility failed to comply with the notice requirements of MCL 460.708. *Id.* Consequently, the only penalty imposed on a public utility for failing to give notice under MCL 460.708 is a limitation on its ability to recover for damages to its underground facilities.

It is also noteworthy that, in drafting this section, the Legislature specifically imposed liability on a "person," but not on a "public agency." This is despite the fact that MCL 460.703 imposes on both persons and public agencies an obligation to ascertain the location of all underground facilities of a public utility in the manner

prescribed by MCL 460.705 or MCL 460.707.[5] Hence, the only section within the MISS-DIG act that actually imposes direct liability on any party for failing to meet the obligations imposed by the Act conspicuously omits public agencies from its coverage.[6] This is indicative of an intent to insulate public agencies from liability under the Act, rather than to abrogate the immunity provided by the GTLA. Consequently, after examining the relevant statutory provisions, we conclude that there are no express provisions within the MISS-DIG act indicating a clear legislative intent to waive or abrogate the immunity provided by the GTLA. See *Ballard, supra* at 574.

Although there are no express provisions within the Act that indicate a legislative intent to waive or abrogate the immunity provided by the GTLA, the MISS-DIG act does indirectly refer to civil remedies premised on the failure to meet the notice obligations imposed by the Act. Nevertheless, we conclude that the indirect reference does not by necessary inference from the statute waive or abrogate the immunity conferred by MCL 691.1407(1).

---

[5] MCL 460.703 states:

> A person or public agency shall not discharge explosives, excavate, or tunnel in a street, highway, public place, a private easement of a public utility, or near the location of a public utility, or near the location of a public utility facility owned, maintained, or installed on a customer's premises, or demolish a building containing a public utility facility without having first ascertained in the manner prescribed in [MCL 460.705] or [MCL 460.707] the location of all underground facilities of a public utility in the proposed area of excavation, discharging of explosives, tunneling, or demolition.

[6] We note that, in addition to the liability imposed under MCL 460.714, the Act provides for injunctive relief and criminal penalties, which are not relevant to this case. See MCL 460.715 and MCL 460.716.

MCL 460.713 provides:

> This act does not affect any civil remedies for damage to public utility facilities and does not affect any civil remedies a person may have for actual damage to the person's property caused by a public utility's negligence in staking its facilities, except as otherwise specifically provided for in this act.

Relying on this section, both State Farm and Corby[7] contend that the MISS-DIG act permits common-law remedies against a "public agency" that is also a "public utility" for negligence in staking its underground facilities. We disagree. This language does not purport to waive governmental immunity for public agencies that are also public utilities. Instead, it merely preserves intact any civil remedies that a person "may have" for damage caused by a public utility's negligence in staking its facilities. Because this section only preserves existing civil remedies, it cannot be construed to imply that the Legislature intended to waive or abrogate any immunity that a "public utility" or "public agency" may have. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000) (noting that governmental immunity is broad and that exceptions are to be narrowly construed). Under a plain reading of this section, if a "public utility" is not also a "public agency," an aggrieved party will have recourse to normal civil remedies. However, if a "public utility" is also a "public agency," the "public agency" will still be entitled to immunity absent the applicability of an exception.

---

[7] In its brief on appeal, the City questions Corby's standing to challenge the City's motion for summary disposition. However, because the City failed to adequately brief this issue, we decline to address it. See *People v Van Tubbergen*, 249 Mich App 354, 365; 642 NW2d 368 (2002) ("Issues insufficiently briefed are deemed abandoned on appeal.").

Corby and State Farm also rely on *Anzaldua v Band*, 457 Mich 530; 578 NW2d 306 (1998), and *Malcolm v East Detroit*, 437 Mich 132; 468 NW2d 479 (1991), for the proposition that the Legislature intended to waive governmental immunity when it subjected governmental agencies, such as the City, to the duties imposed by the MISS-DIG act. We find this reliance to be misplaced.

In *Anzaldua* the Court found a waiver of governmental immunity under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*, where the Legislature "expressly applied the act to the state by including the state and its political subdivisions in the definition of 'employer.' " *Anzaldua, supra* at 551. Under the WPA, there is a general cause of action applicable against employers who violate its provisions. See MCL 15.363. In contrast, the MISS-DIG act does not create an express cause of action against a class defined to include governmental entities. Rather, the only section within the Act that imposes liability omits public agencies from its coverage.

Likewise, in *Malcolm*, the Court noted that the term "person," as defined under the former emergency medical services act (EMSA), MCL 333.20701 *et seq.*,[8] included governmental entities. *Malcolm, supra* at 138. Because EMSA adopted a standard of immunity different from that stated in the GTLA, the Court concluded that the Legislature intended EMSA to serve as an exception to or amendment of the GTLA. *Id.* at 138-139. Unlike EMSA, the MISS-DIG act does not establish standards of immunity. Rather, it imposes notification requirements on persons, public agencies, and public utilities. Consequently, the inclusion of some govern-

---

[8] The former EMSA was repealed by 1990 PA 179. The current EMSA is codified at MCL 333.20901 *et seq.*

mental entities within the definitions of "public agency" and "public utility" does not alter the standard of immunity applicable to public agencies and public utilities.[9]

Because the immunity provided by the GTLA is broad and its exceptions are to be narrowly construed, *Nawrocki, supra* at 158, we hold that the MISS-DIG act does not waive or abrogate the immunity provided by the GTLA, either expressly or by necessary inference from the statute. *Ballard, supra* at 574. Furthermore, we conclude that no other exception to the immunity provided by the GTLA properly applies to the facts of this case. *Mack, supra* at 199. Therefore, the trial court should have granted the City's motion for summary disposition based on governmental immunity. Accordingly, we reverse the order of the trial court and remand for entry of summary disposition in favor of the City pursuant to MCR 2.116(C)(7).

Reversed and remanded for entry of summary disposition in favor of the City. We do not retain jurisdiction.

---

[9] In addition, Corby and State Farm also contend that, if the MISS-DIG act conflicts with the GTLA, the MISS-DIG act will control because it was enacted after the GTLA and is more specific than the GTLA. However, because the MISS-DIG act does not establish an independent cause of action for violations of its provisions and does not address governmental immunity, we find no conflict between these statutes.