*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILMINGTON SAVINGS FUND SOCIETY FSB,

        Plaintiff-Appellee,

v

ALEX SCHMIDT,

        Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 353127
Wayne Circuit Court
LC No. 18-012551-CK

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Alex Schmidt, appeals as of right the trial court order granting plaintiff's[1] motion for summary disposition under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In 2006, Schmidt and Jamie Maddux purchased a home in Garden City, Michigan, with two mortgages. The mortgages secured two notes, the first for a principal amount of $78,400, and the second for a principal amount of $19,600. The $19,600 Note is the one at issue in this case. The $19,600 Note provides for a yearly interest rate of 12.49% and requires monthly payments of $209.03. The entire unpaid amount is required to be paid in a "balloon payment" on September 1, 2021. The $19,600 Note further states that, after notice of default:

> If I do not pay the overdue amount by the date stated in the notice . . . I will be in default. If I am in default, the Note Holder may require me to pay immediately

---

[1] Plaintiff appears as certificate trustee of Bosco Credit II Trust Series 2010-1. The original plaintiff in this case was Deutsche Bank National Trust Company, which was the former certificate trustee of Bosco Credit II Trust Series 2010-1. For ease of reference, we will use the term "plaintiff" to include both entities.

the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Schmidt and Maddux made payments on the $19,600 Note for a few months, with the last payment being made on September 26, 2007. The Garden City home was eventually foreclosed on, with the proceeds applied to the balance of the first note. The $19,600 Note was transferred between several entities, eventually being held by plaintiff. Maddux discharged her debt on both notes in bankruptcy.

On May 7, 2018, the loan servicer for the $19,600 Note sent Schmidt notice that he owed $16,130.16 on the $19,600 Note, and that the servicer intended to "accelerate the balance due." The servicer then notified Schmidt that the balance due had been accelerated, and now came to $34,123.25. On September 24, 2018, plaintiff filed a complaint alleging breach of note. After two rounds of cross-motions for summary disposition, the trial court granted summary disposition for plaintiff and denied Schmidt's motion for summary disposition under MCR 2.116(C)(7).

## II. STATUTE OF LIMITATIONS

## A. STANDARD OF REVIEW

Schmidt argues that the trial court erred by denying his motion for summary disposition under MCR 2.116(C)(7). This Court reviews de novo a trial court's decision on a motion for summary disposition. *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 482; 722 NW2d 906 (2006). "Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations." *Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d 122 (2013). "[T]he reviewing court will accept the allegations stated in the plaintiff's complaint as true unless contradicted by documentary evidence." *Id.* Furthermore, the court "must view the pleadings and supporting evidence in the light most favorable to the nonmoving party," and "[i]f there is no factual dispute, whether a plaintiff's claim is barred under the applicable statute of limitations is a matter of law for the court to determine." *Id.* at 522-523. This Court reviews de novo questions of statutory interpretation. *O'Leary v O'Leary*, 321 Mich App 647, 652; 909 NW2d 518 (2017).

Statutory interpretation begins with the plain language of the statute. We read the statutory language in context and as a whole, considering the plain and ordinary meaning of every word. When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." [*Id.* (quotation marks and citations omitted).]

## B. ANALYSIS

Schmidt argues that the applicable statute of limitation is set forth in MCL 600.5807(9). The trial court, however, held that the applicable limitations period was set forth in MCL 440.3118, which provides limitations on actions to enforce obligations to pay a note.[2]

The applicable limitations period for a note depends on whether the note is payable on demand or is payable at a definite time. Relevant to the issues raised on appeal, MCL 440.3118 states:

> (1) Except as provided in subsection 5, an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date.

> (2) Except as provided in subsection 4 or 5, if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within 6 years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of 10 years.

The parties dispute whether the $19,600 Note is payable "on demand" or if it is payable "at a definite time." Both terms are statutorily defined. MCL 440.3108(1) provides that a promise or order is payable on demand if it:

> (a) States that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder.

---

[2] The trial court found that the $19,600 Note was a promissory note governed by Article 3 of Michigan's Uniform Commercial Code (UCC), MCL 440.3101 *et seq*. In a footnote to his brief on appeal, Schmidt argues:

> Plaintiff's "reliance on MCL 440.3118(1) is misplaced as Article 3 of the UCC does not apply to the [$19,600 Note]. [Schmidt] incorporates his preceding argument as to Plaintiff's inability to establish status as holder or a holder in due course of the [$19,600 Note.]

Presumably, Schmidt is attempting to incorporate an argument he made before the trial court into his brief on appeal. However, "[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, we conclude that this challenge to the trial court's decision is abandoned and we will not review it further.

(b) Does not state any time of payment.

With regard to whether a note is payable at a definite time, MCL 440.3108(2) provides:

> (2) A promise or order is "payable at a definite time" if it is payable on elapse of a definite period of time after sight or acceptance or at a fixed date or dates or at a time or times readily ascertainable at the time the promise or order is issued, subject to rights of:
>
> (a) Prepayment.
>
> (b) Acceleration.
>
> (c) Extension at the option of the holder.
>
> (d) Extension to a further definite time at the option of the maker or acceptor or automatically upon or after a specified act or event.

Finally, MCL 440.3108(3) provides:

> (3) If an instrument, payable at a fixed date, is also payable upon demand made before the fixed date, the instrument is payable on demand until the fixed date and, if demand for payment is not made before that date, becomes payable at a definite time on the fixed date.

In this case, the $19,600 Note specifies that payments of $209.03 must be made on the first day of each month starting October 1, 2006, with all unpaid amounts due on September 1, 2021. As such, the $19,600 Note was payable on fixed dates, and thus "at a definite time" under MCL 440.3108(2). As a note payable at a definite time, the limitations period in MCL 440.3118(1) is applicable and provides that the action "must be commenced within 6 years after the due date or dates stated in the note or, if a due date is accelerated, within 6 years after the accelerated due date."

Rather than argue that plaintiff's action is somehow time-barred by MCL 440.3118(1), Schmidt asserts that the $19,600 Note became a demand note once he failed to make his November 1, 2007 payment because that was when plaintiff first had the option of accelerating the amount due. He argues that the limitations period applicable to notes payable on demand that is set forth in MCL 440.3118(2), therefore, applies and bars plaintiff's claim.

Schmidt relies on *Schneider v Spisak*, unpublished per curiam opinion of the Court of Appeals, issued October 18, 2002 (Docket No. 234214). However, in that case the note in question stated both that it was payable on demand, and that it was payable "no later than" a certain date. *Id*. at 1. As a result, the note in *Schneider* fell squarely within MCL 440.3108(3). In contrast, because the $19,600 Note contains terms requiring payment at fixed times, and an acceleration clause, it satisfied MCL 440.3108(2)'s definition of a note payable at a definite time. Because MCL 440.3108(2)(b) expressly provides that a promise "payable at a definite time" may be subject to rights of acceleration, Schmidt's argument that acceleration transforms a note payable at a definite time to one payable on demand is not consistent with the statutory language. See *O'Leary*,

321 Mich App at 652. The $19,600 Note is, therefore, not a note payable on demand, so both the six-year and then ten-year limitations periods set forth in MCL 440.3118(2) are inapplicable.

In sum, because the $19,600 Note is a note payable at a definite time, the limitations period in MCL 440.3118(1) applies. Under that statute, plaintiff's claim—which is limited to amounts that came due under the $19,600 Note in the six years preceding filing the instant action—is not time-barred.[3]

### III. LACHES

### A. STANDARD OF REVIEW

Next, Schmidt argues that plaintiff's claim is barred by the doctrine of latches. We review de novo a trial court's decision regarding the application of the doctrine of latches, but any factual findings supporting the court's decision are reviewed for clear error. *Charter Twp of Shelby v Papesh*, 267 Mich App 92, 108; 704 NW2d 92 (2005).

### B. ANALYSIS

"[L]aches can apply 'even though the period of limitations has not run.' " *Knight v Northpointe Bank*, 300 Mich App 109, 119; 832 NW2d 439 (2013). In *Yankee Springs Twp v Fox*, 264 Mich App 604, 611-612; 692 NW2d 728 (2004), this Court explained:

> The doctrine of laches is concerned with unreasonable delay that results in circumstances that would render inequitable any grant of relief to the dilatory plaintiff. The application of the doctrine of laches requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim against the defendant. Laches does not apply unless the delay of one party has resulted in prejudice to the other party. It is the effect, rather than the fact, of the passage of time that may trigger the defense of laches. The defendant has the burden of proving that the plaintiff's lack of due diligence resulted in some prejudice to the defendant. [Quotation marks and citations omitted.]

Schmidt has failed to show prejudice in this case. He argues that prejudice resulted because, if plaintiff had acted sooner, Schmidt would have been able to declare bankruptcy and rebuild his credit earlier. Schmidt argues that because of plaintiff's delay, his work to build his credit history will now be wasted and he will be forced to file bankruptcy, which will set his economic stability back by over 10 years. However, he has owed on the $19,600 Note since 2007. At any point between then and now he could have filed bankruptcy and then worked on rebuilding his credit. The fact that he chose instead to build his credit history while he was in default on the $19,600 Note does not render it inequitable for plaintiff to now bring suit for his breach of his obligations under the note. Moreover, although—as Schmidt points out—all entities with an

---

[3] Because we find no error in the trial court's application of the limitations period in MCL 440.3118(1), we decline to address Schmidt's alternative argument that MCL 600.5807(9) bars plaintiff's claim.

interest in the $19,600 Note had notice that Schmidt was in default, and although plaintiff could have filed suit sooner, the fact that a claim could have been made sooner does not render the decision to file later prejudicial to Schmidt. Because Schmidt cannot establish prejudice, his claim of laches fails as a matter of law. See *id*.

## IV. INTEREST RATES

Finally, Schmidt argues that the trial court erred by implicitly rejecting his argument that the interest rate charged was usurious. MCL 438.31 provides, as relevant here:

> [I]n all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum. This act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness issued by any corporation, association or person, the issue and rate of interest of which have been expressly authorized by the public service commission or the securities bureau of the department of commerce, or is regulated by any other law of this state, or of the United States . . . .

In arguing that the 7% limit in MCL 438.31 applies, Schmidt implicitly argues that the "rate of interest" of the $19,600 Note was not "regulated by any other law of this state, or of the United States." *Id.*

Plaintiff argues that the 12.49% interest rate was legal because, at the time the $19,600 Note was made, the original lender was registered as a lender under the Secondary Mortgage Loan Act (SMLA), MCL 493.51 *et seq.* The SMLA authorizes "a licensee or registrant . . . [to] charge, contract for, receive, or collect on a secondary mortgage loan an interest rate not exceeding the interest rate permitted by the credit reform act, 1995 PA 162, MCL 445.1851 to 445.1864." MCL 493.71(1). The Credit Reform Act, MCL 445.1851 *et seq.*, in turn, provides that "a regulated lender may charge, collect, and receive any rate of interest or finance charge for an extension of credit not to exceed 25% per annum." MCL 445.1854(1). A "regulated lender" includes a licensee under the SMLA. MCL 445.1852(i).

> The SMLA defines "secondary mortgage loan" as
>
> a loan that has a term of 90 days or more; that is made to a person for personal, family, or household purposes; and that is secured by a mortgage on an interest in real property that is used as a dwelling and is subject to a lien of 1 or more outstanding mortgages. A secondary mortgage loan may be secured by other collateral in addition to real property. . . . [MCL 493.51(2)(p).]

Here, the loan to Schmidt had a term of 90 days or more, was made for personal, family, or household purposes, was secured by a mortgage on real property, and was subject to a lien of one outstanding mortgage. As a result, it falls directly within the definition of a secondary mortgage loan. Because the loan to Schmidt associated with the $19,600 Note constituted a "secondary mortgage loan," the SMLA, with its 25% interest rate limit, regulates the rate of interest of the

$19,600 Note, thus displacing the default 7% rate under MCL 438.31.[4] The interest rate, therefore, was not usurious.

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly

---

[4] Schmidt argues that the "secondary mortgage loan" definition is not met because the mortgage associated with the $19,600 Note was a "purchase-money second mortgage," and not a "secondary mortgage." However, the statute does not distinguish between purchase-money second mortgages and "secondary mortgages." As a result, the distinction does not remove the $19,600 Note from the definition of a secondary mortgage loan set forth in MCL 493.51(2)(p).