*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY MCCORMICK and ROBERT MCCORMICK,

Plaintiffs-Appellees,

v

MICHIGAN STATE UNIVERSITY,

Defendant-Appellant.

UNPUBLISHED
January 10, 2025
2:45 PM

No. 367598
Court of Claims
LC No. 22-00159-MK

Before: MALDONADO, P.J., and M. J. KELLY and GARRETT, JJ.

PER CURIAM.

In this breach of contract action brought by plaintiffs, Amy and Robert McCormick, defendant, Michigan State University (MSU), asks us to reverse the order of the Court of Claims denying its motion for summary disposition pursuant to MCR 2.116(C)(7) (immunity granted by law). We find no error in the trial court's ruling and, therefore, we affirm.

## I. BACKGROUND

The McCormicks, husband and wife, were tenured faculty members at the Michigan State University College of Law (DCL) before it merged with MSU in 2020.[1] Pursuant to an asset-purchase agreement, DCL ceased to exist, and any claim the McCormicks had under their contracts with DCL had to be brought against MSU. This case arises out of the DCL's integration with MSU and its impact on the McCormicks' employment agreements with the DCL. In April 2013, the McCormicks agreed to resign their tenured positions at DCL in exchange for certain contractual guarantees. Robert McCormick retired in exchange for certain retirement benefits and Amy McCormick's agreement stated that she could continue as an emeritus professor, teach one

---

[1] To remain consistent with our abbreviations in *McCormick v Mich State Univ College of Law*, unpublished per curiam opinion of the Court of Appeals, issued July 11, 2024 (Docket No. 362932), we refer to the Michigan State University College of Law as "the Detroit College of Law," or "DCL," when referring to plaintiffs' employer. This was a previous corporate entity separate from and independent of defendant. *Id.* at 1 n 1.

-1-

course per academic year, and receive the same employee healthcare coverage that she had as a tenured faculty member.

In October 2018, DCL and MSU entered a memorandum of understanding regarding their integration through an asset purchase. They agreed that all DCL employees would be terminated on December 31, 2019, and would be offered employment with MSU beginning on January 1, 2020, on terms consistent with MSU's employment policies and practices. MSU made an offer of employment to Amy McCormick, which she declined. DCL and MSU also entered into an asset-purchase agreement, signed on December 12, 2019, which provided that DCL would sell, assign, transfer, convey, and deliver all of its assets to MSU, and MSU would "assume and agree to pay, perform and discharge" all of the DCL's liabilities and obligations. DCL disclosed the asset-purchase agreement during litigation with the McCormicks in May 2022.

The McCormicks first brought a claim against MSU in the Court of Claims on September 22, 2022, alleging that MSU fraudulently concealed the transfer agreement by failing to notify the McCormicks of its existence until May 2022. The McCormicks argued that MCL 600.5855, the fraudulent-concealment exception to the general notice provisions of the Court of Claims Act, MCL 600.6401 *et seq.*, applied to their claims and granted them two years after the discovery of the agreement to initiate their suit. The Court of Claims found that the McCormicks failed to plead affirmative acts by MSU to support a claim for fraudulent concealment, and it gave them an opportunity to amend their complaint.

In the amended complaint, the McCormicks alleged that, beginning in June 2019, Amy McCormick communicated with DCL representatives about its obligations under the April 2013 agreements and the possible impact that the DCL-MSU integration would have on those agreements. The McCormicks also alleged that Amy McCormick communicated with MSU's legal staff. According to the McCormicks, during these communications, MSU and DCL made affirmative misrepresentations that DCL was the only entity that could be liable for the McCormicks' contract-based claim. The McCormicks asserted that they relied on these statements to pursue a claim against DCL only. The Court of Claims ruled that the McCormicks' amended allegations supported a claim for fraudulent concealment, which would toll MCL 600.6431's statutory notice provision, and it denied MSU's motion for summary disposition. The Court of Claims denied MSU's motion for reconsideration, and this appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews "de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Under MCR 2.116(C)(7), summary disposition is proper when a claim is barred by immunity granted by law." *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 482; 722 NW2d 906 (2006). "In order to avoid summary disposition pursuant to MCR 2.116(C)(7), a plaintiff must plead facts in avoidance of immunity." *Id*. "In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true, and construes in plaintiff's favor, well-pleaded allegations in the pleadings, affidavits, depositions, admissions, and documentary evidence submitted by the parties to determine whether a genuine issue of material fact exists." *Emerzian v North Bros Ford Inc*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365100); slip op at 2.

## III. FRAUDULENT CONCEALMENT

MSU argues that the Court of Claims erred by ruling that the fraudulent-concealment exception applied to the McCormicks' claim to toll MCL 600.6431's statutory notice provision. We disagree.

The statutory notice provision of the Court of Claims Act, MCL 600.6431(1), provides:

> Except as otherwise provided in this section, a claim may not be maintained against this state unless the claimant, within 1 year after the claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against this state or any of its departments, commissions, boards, institutions, arms, or agencies.

MCL 600.6431 creates a condition precedent to suing the State in the Court of Claims and avoiding the application of governmental immunity. *Christie v Wayne State Univ*, 511 Mich 39, 51; 993 NW2d 203 (2023). A plaintiff's failure to comply with the notice requirements of MCL 600.6431 "provides a complete defense in an action against the state or one of its departments." *Fairley v Dep't of Corrections*, 497 Mich 290, 292; 871 NW2d 129 (2015).

MCL 600.5855 codifies the fraudulent-concealment exception to the Court of Claims Act's statutory notice requirement and provides for the tolling of notice periods and statutory limitations periods, such as MCL 600.6431, when the fraudulent-concealment exception applies. *Mays v Snyder (Mays I)*, 323 Mich App 1, 43-44; 916 NW2d 227 (2018). MCL 600.5855 specifically provides that, if a person fraudulently conceals the existence of a claim or the identity of a party who is responsible for a claim from the plaintiff, the action may be brought within two years after the plaintiff discovers, or should have discovered, the existence of the claim or the responsible party. MCL 600.5855. There are limits to MCL 600.5855's applicability, and "[i]f liability were discoverable from the outset, then MCL 600.5855 will not toll the applicable period of limitations." *Dillard v Schlussel*, 308 Mich App 429, 443; 865 NW2d 648 (2014) (quotation marks and citation omitted; alteration in original).

We have previously addressed MCL 600.5855's applicability to MCL 600.6431 and held that "the fraudulent-concealment exception may provide an alternative basis for affirming the denial of defendants' motions for summary disposition." *Mays I*, 323 Mich App at 38. The plaintiffs in *Mays I* alleged an inverse-condemnation claim and various constitutional claims against the state and several agencies following the change in the source of drinking water for the city of Flint. *Id*. at 22-23. The defendants moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that the plaintiffs had failed to comply with MCL 600.6431's notice requirements, and the Court of Claims denied the defendants' motion. *Id*. at 23-24.

The *Mays I* Court affirmed the Court of Claims' decision to deny summary disposition pursuant to MCR 2.116(C)(7). *Id*. at 90. We determined that the Legislature clearly intended to incorporate MCL 600.5855 into the Court of Claims Act and that reading "MCL 600.5855, as imported into the [Court of Claims Act], and MCL 600.6431 in harmony require[d] the conclusion that when the fraudulent-concealment exception applies, it operates to toll the statutory notice period as well as the statutory limitations period." *Id*. at 43-44.

In *Mays v Governor of Mich (Mays II)*, 506 Mich 157; 954 NW2d 139 (2020), the Michigan Supreme Court considered the issues raised in *Mays I*. The Court affirmed this Court's decision in *Mays I* by equal division. *Mays II*, 506 Mich at 167. The *Mays II* decision consisted of five separate opinions. The Court's lead opinion declined to address whether any exceptions applied to MCL 600.6431, stating that, "[b]ecause we believe that there still remain questions of fact about when plaintiffs' harms accrued, we see no need to look to these doctrines at this point in the proceedings." *Id*. at 186 n 11. Justice BERNSTEIN stated his view that the fraudulent-concealment exception should apply to MCL 600.6431's notice requirement in a separate concurrence. *Id*. at 209-210 (BERNSTEIN, J., concurring). Justice MARKMAN, joined by Justice ZAHRA, dissented from Justice BERNSTEIN's view, reasoning that "[t]he fraudulent-concealment statute only constitutes an exception to statutes of limitations and does not constitute an exception to the statutory notice provision at issue here." *Id*. at 283 (MARKMAN, J., dissenting). "The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that binding precedent for future cases." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 535; 821 NW2d 117 (2012) (quotation marks and citations omitted). Because a majority of the Supreme Court declined to decide whether MCL 600.5855 operated to toll the notice period, it did not reverse our holding in *Mays I*.

MSU's argument that *Mays I* and the fraudulent-concealment exception do not apply to the McCormicks' claims is without merit. The McCormicks alleged that they did not learn of the agreement and MSU's liability until DCL disclosed the agreement on May 12, 2022. Following this disclosure, the McCormicks filed their complaint against MSU on September 22, 2022. If these allegations are true, the fraudulent-concealment exception applies to the claims, MCL 600.5855 would toll the statutory notice period, and the McCormicks properly brought a claim against defendant within two years of May 12, 2022.

MSU relies on an unpublished case from this Court limiting the reasoning of *Mays I*, and concluding that MCL 600.5855 does not apply to MCL 600.6431. *Taylor v Univ of Mich Bd of Regents*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 356354), p 6.[2] In *Taylor*, this Court opined that, "perhaps most significantly, this case does not involve fraudulent concealment of information, through affirmative actions of defendants, in an effort to prevent plaintiff from discovering and filing a claim against them." *Id*. *Taylor* is not persuasive because, in this case, the McCormicks raised a claim of fraudulent concealment through MSU's affirmative acts. Accordingly, MSU's reliance on *Taylor* is misplaced.

## IV. AFFIRMATIVE MISREPRESENTATIONS

MSU next argues that the McCormicks did not adequately plead affirmative misrepresentations that could constitute fraudulent concealment in their amended complaint. Again, we disagree.

---

[2] We note that unpublished opinions are not binding precedent, but we may consider them for their persuasive value. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 370; 986 NW2d 451 (2022).

-4-

Fraudulent concealment is "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *The Reserve at Heritage Village Ass'n v Warren Financial Acquisition, LLC*, 305 Mich App 92, 122; 850 NW2d 649 (2014) (quotation marks and citations omitted). For the fraudulent-concealment exception to a statutory limitations period to apply, absent a fiduciary relationship, "a plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Mays I*, 323 Mich App at 39 (quotation marks and citation omitted). Within the context of MCL 600.5855, a plaintiff must exercise reasonable diligence to discover facts pertinent to the existence of a cause of action. *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 45 n 2; 698 NW2d 900 (2005).

Under the traditional rules of successor liability, "[i]f the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities." *Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 702; 597 NW2d 506 (1999). In contrast, "where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies." *Id*. Contrary to these general rules, in this case, under the purchase agreement, defendant absorbed the DCL's assets *and* its liabilities.

In the McCormicks' amended complaint, they alleged that DCL and MSU made affirmative misrepresentations designed to conceal defendant's liability for the breach of Amy McCormick's contract. They asserted that DCL's Dean informed Amy McCormick, on an unspecified date, that DCL's integration with MSU would be accomplished by a sale of assets, not a merger, and that MSU was not required to assume DCL's liabilities. The Dean also allegedly told Amy McCormick on June 20, 2019, that MSU would only assume DCL's liabilities it elected to assume and that DCL could not dissolve until the McCormicks' claim was liquidated. When Amy McCormick wrote to DCL's Dean and MSU's representatives on August 5, 2019, regarding the Dean's previous statement, neither he nor MSU's representatives contradicted her.

Further, the McCormicks alleged that, on December 26, 2019, MSU's attorney explicitly stated, "[Y]our contract claim, if you brought one, would be against [DCL], not MSU, among other things," and, "This is also how your contract damages would be valued in court and therefore also constitutes how we would evaluate your contract claim against [DCL], if you were to bring one." The McCormicks assert that these statements were false and that they relied on DCL's and MSU's affirmative misrepresentations and pursued a claim only against DCL. Accepting the allegations as true, MSU's and DCL's representatives made affirmative misrepresentations designed to prevent the McCormicks from discovering MSU's liability for their contracts. See *Reserve at Heritage Village*, 305 Mich App at 122. Accordingly, the McCormicks' amended complaint sufficiently alleged that MSU's representative made affirmative misrepresentations that it was not liable for DCL's contractual obligations on the basis that there was an asset purchase, and that the McCormicks were misled by these misrepresentations until May 12, 2022, when the nature of the merger came to light.

MSU argues that these statements are not relevant to the question of whether it engaged in fraudulent concealment because they were made before DCL terminated Amy McCormick. MSU

relies on *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 641; 692 NW2d 398 (2004). The plaintiff in *Doe* raised various claims against the defendant, but the plaintiff also alleged that the defendant fraudulently concealed the plaintiff's causes of action against the defendant by affirmatively misrepresenting an individual as a member of the clergy who was fit to serve his duties and concealing the individual's previous sexual abuse. *Id*. at 635-636. In evaluating the plaintiff's fraudulent-concealment claim, this Court noted that the plaintiff alleged action or inaction before and after the alleged abuse that gave rise to causes of action against the defendant. *Id*. at 641. The *Doe* Court stated that "only actions after the alleged injury could have concealed plaintiff's causes of action against defendant because actions taken before the alleged injury would not have been capable of concealing causes of action that did not yet exist." *Id*.

But this Court has since interpreted *Doe* to generally provide that actions that occur before an alleged injury cannot conceal a cause of action. See, e.g., *Tinney v Widdis, Inc*, unpublished per curiam opinion of the Court of Appeals, issued November 3, 2016 (Docket No. 328050), p 7. However, in this case, the asset-purchase agreement in which MSU agreed to assume DCL's liabilities was dated December 12, 2019, but the conversation with MSU's counsel, during which he asserted that the McCormicks' cause of action would necessarily be against DCL, occurred on December 26, 2019. The McCormicks also allege that they believed MSU was liable for DCL's contractual obligations and discussed this belief with MSU, but they were persuaded by MSU's affirmative misrepresentations regarding its liability until May 12, 2022. The McCormicks have alleged that MSU's representatives made affirmative misrepresentations designed to prevent them from discovering that MSU was liable for DCL's contractual obligations after MSU agreed to assume that liability. This plainly distinguishes *Doe* from this case.

Accepting the McCormicks' allegations as true, a genuine issue of material fact exists regarding whether MSU's representatives fraudulently misrepresented its liability for DCL's contractual obligations and whether the McCormicks relied on those misrepresentations when filing their claim against MSU more than one year after the claim accrued. Accordingly, the Court of Claims did not err by denying MSU's motion for summary disposition.

Affirmed.


/s/ Allie Greenleaf Maldonado
/s/ Kristina Robinson Garrett