*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY WILLIAMS,

       Plaintiff-Appellee,

v

STATE OF MICHIGAN DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

       Defendant-Appellant

and

KRISTIN ANDERSON,

       Defendant.

UNPUBLISHED
October 28, 2021

No. 355203
St. Clair Circuit Court
LC No. 17-002595-CD

Before: SHAPIRO, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

Defendant Department of Health and Human Services appeals by leave granted[1] the trial court order denying DHHS's motion for summary disposition under MCR 2.116(C)(10) in this action alleging employment discrimination and retaliation. We affirm the denial of summary disposition on the discrimination claim, but reverse the denial of summary disposition on the retaliation claim.

## I. BACKGROUND

Plaintiff worked for DHHS for 27 years, from 1989 to 2016, holding several different positions during her career. In 2016, plaintiff was working in the St. Clair County DHHS office

---

[1] *Williams v Mich Dep't of Health & Human Servs*, unpublished order of the Court of Appeals, entered November 18, 2020 (Docket No. 355203).

-1-

as a foster care specialist. In this role she appeared at a permanency planning hearing. Plaintiff had been asked to complete an "ICPC request"[2] relating to a child potentially being placed with her father out of the state, and had also, more recently, been asked to look into a potential alternative plan. Plaintiff had worked on the ICPC request but not yet finished it. After the court clarified that the alternative plan was not feasible, the court inquired if the ICPC request was complete:

> *The Court*: Has it been done?
>
> *Ms. Williams*: It hasn't been done yet because—
>
> *The Court*: You haven't made the request yet?
>
> *Ms. Williams*: No, we have not.
>
> *The Court*: Well, I met with you and your supervisor and told you that that had to be done.
>
> *Ms. Williams*: I was following the directions of my supervisor.
>
> *The Court*: Instead of following the directions of the Court?
>
> *Ms. Williams*: Sorry, yes, you're right.
>
> *The Court*: Get it done.

The court, Judge Elwood L. Brown, met with plaintiff's supervisor, Kristin Anderson, and Program Manager Deborah Walbecq, regarding this incident. The court eventually held a show-cause hearing regarding whether plaintiff had committed criminal contempt of court by falsely implying to the court that Anderson had directed plaintiff not to work on the ICPC request. The court found plaintiff guilty of criminal contempt of court. This Court eventually affirmed plaintiff's conviction on appeal, holding that, while plaintiff's words "could be open to multiple interpretations," there was sufficient evidence to support her conviction.[3]

After plaintiff's contempt of court conviction, Judge Brown sent an e-mail to the DHHS St. Clair County Director, William Weston:

> Bill,
>
> It is with regret that I tell you that having found Mary Williams in contempt of court for not being truthful in response to questions that I asked her directly during a review hearing regarding [a minor child] that I can no longer trust that she

---

[2] ICPC refers to the Interstate Compact on the Placement of Children. See MCL 3.711 *et seq.*

[3] *In re Williams*, unpublished per curiam opinion of the Court of Appeals, issued December 28, 2017 (Docket No. 334460), pp 4-5.

> will be forthright and truthful in the future. I ask that she not be assigned to present reports in cases before me.
>
> Judge Brown

Soon thereafter, Walbecq conducted an investigation of the incident and recommended plaintiff be terminated because her conduct constituted "neglect of duty," "inappropriate behavior," and "conduct unbecoming a state employee." Plaintiff was terminated effective October 6, 2016.

Plaintiff filed the instant action alleging, among other things,[4] that her termination constituted racial discrimination and retaliation in violation of the Civil Rights Act (CRA), MCL 37.2010 *et seq*. Plaintiff is African-American and previously filed Equal Employment Opportunity Commission (EEOC) charges against DHHS alleging discrimination. DHHS's initial motion for summary disposition under MCR 2.116(C)(7) and (C)(8) was denied, and this Court affirmed with regard to plaintiff's CRA claims.[5]

After the close of discovery, DHHS moved for summary disposition, arguing that plaintiff failed to establish a prima facie case of discrimination or retaliation, and that she has not created a fact question that DHHS's reason for firing plaintiff was pretextual.

In response, plaintiff argued, in part, that the pervasive racism in the St. Clair County DHHS office supported an inference of discrimination. Plaintiff relied on her deposition testified that her coworkers would make toy blackbirds crow the "n" word when they walked by her; that she was called offensive nicknames, including "Trouble" and "Sunshine;" that she was told repeatedly to smile so she would not seem like an "angry black woman"; and that coworkers posted offensive cartoons of monkeys. Plaintiff also asserted that Walbecq, who completed the DHHS investigation leading to plaintiff's discharge, was a perpetrator of racist behavior. Plaintiff testified that she reported an offensive comment made by Walbecq about African-American homes smelling like fried chicken, after which Anderson began spraying air freshener whenever plaintiff visited Anderson's office. Plaintiff also provided the deposition transcript of Cheryl Howell, who is African-American and worked for DHHS in the St. Clair County Office in various roles from 2002 through about 2013. Howell confirmed that she experienced racism at the St. Clair office and testified that Walbecq had sent her a picture of a monkey "walking like a regular person and talking like a rapper."[6]

---

[4] All of plaintiff's other claims have been dismissed or are no longer at issue. Anderson was dismissed from this action because she was not served with process.

[5] *Williams v Dep't of Health & Human Servs*, unpublished per curiam opinion of the Court of Appeals, issued September 17, 2019 (Docket No. 343261), pp 4-5.

[6] Howell showed the e-mail to plaintiff, who described the monkey as being dressed with a gold chain around his neck, a gold tooth and a pimp hat.

After hearing oral argument, the trial court denied DHHS's motion for summary disposition, holding that "[a] genuine issue of material fact has been presented."

## II. ANALYSIS

### A. COLLATERAL ESTOPPEL

As an initial matter, DHHS argues that collateral estoppel bars plaintiff from arguing that she did not make a false statement to Judge Brown and that there was no factual basis for her criminal contempt conviction.[7]

"The doctrine of collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *King v Munro*, 329 Mich App 594, 599; 944 NW2d 198 (2019) (quotation marks and citation omitted). Three elements are generally required for the application of collateral estoppel: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel."[8] *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks and citation omitted). "To be necessarily determined in the first action, the issue must have been essential to the resulting judgment[.]" *Bd of Co Rd Comm'rs for Co of Eaton v Schultz*, 205 Mich App 371, 377; 521 NW2d 847 (1994).

To begin, the question of whether plaintiff made a false statement to Judge Brown was actually litigated in the criminal contempt proceedings. The show-cause order stated that plaintiff "was asked a direct question by the court and it appears . . . that it was intentionally false." After the hearing, Judge Brown found beyond a reasonable doubt that plaintiff misrepresented "the status of the Interstate Compact when she indicated that it had not been done because her supervisor told her not to do it." Thus, whether plaintiff made a false statement to the court was the crux of the criminal contempt matter, and Judge Brown's ruling was affirmed on appeal. In direct conflict with this prior adjudication, plaintiff maintains in this case that she did not make a false statement to Judge Brown. Because this specific issue was actually litigated in the prior action, the first element of collateral estoppel is satisfied.

Plaintiff does not dispute that there is sufficient privity between the special prosecutor who presented proofs at the show-cause hearing on behalf of the State of Michigan and DHHS such that the "same parties'" requirement is met in this case. See *People v Gates*, 434 Mich 146, 156; 452 NW2d 627 (1990) (holding that "both the department and the prosecutor's office are creatures of the state and thus should be considered to be the same party" for purposes of collateral estoppel).

---

[7] We review de novo the application of legal doctrines such as collateral estoppel. See *Estes v Titus*, 481 Mich 573, 578; 751 NW2d 493 (2008).

[8] The third element need not be considered in this case because, when "collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat*, 469 Mich at 695.

We further conclude that plaintiff had a full and fair opportunity to litigate this issue in the criminal contempt proceedings. Plaintiff obtained appellate review of the criminal contempt judgment; the issue was one of fact, not law; there are no differences in the quality or extensiveness of the proceedings that would warrant relitigation; there was a higher burden of persuasion in the criminal contempt case; and plaintiff has not demonstrated a clear and convincing need for a new determination of the issue. See *Monat*, 469 Mich at 683 n 2 (outlining the factors to consider when determining whether "a party has had a 'full and fair' opportunity to litigate an issue[.]").

For these reasons, we hold that plaintiff is collaterally estopped from arguing that she did not commit contempt of court.

## B. RACE DISCRIMINATION

Next, DHHS argues that plaintiff has not made out a prima facie case of discrimination and that she has not created a fact question that DHHS's reason for firing plaintiff was pretextual.[9]

The CRA precludes employers from discriminating on the basis of race:

> (1) An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202.]

Plaintiff has not produced direct evidence that discrimination motivated her firing, and so she must rely on the *McDonnell Douglas*[10] framework. *Hazle v Ford Motor Co*, 464 Mich 456, 463; 628 NW2d 515 (2001). "To establish a prima facie case of discrimination, plaintiff must prove by a preponderance of the evidence that (1) she was a member of the protected class; (2) she suffered an adverse employment action, in this case . . . discharge; (3) she was qualified for the position; but (4) she was discharged under circumstances that give rise to an inference of unlawful

---

[9] We review de novo a grant or denial of summary disposition. *State Farm Fire & Cas Co v Corby Energy Servs, Inc*, 271 Mich App 480, 482; 722 NW2d 906 (2006). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

[10] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

discrimination."[11] *Lytle v Malady (On Rehearing)*, 458 Mich 153, 172-173; 579 NW2d 906 (1998).

### 1. PRIMA FACIE CASE—QUALIFICATION REQUIREMENT

"An employee is qualified if he was performing his job at a level that met the employer's legitimate expectations." *Town v Mich Bell Tel Co*, 455 Mich 688, 699; 568 NW2d 64 (1997) (opinion by BRICKLEY, J.). This Court has described the qualification prong of a prima facie case as requiring "only minimal qualification." *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 369; 597 NW2d 250 (1999).

There is no dispute that, prior to her criminal contempt conviction, plaintiff was qualified for her position. Indeed, Anderson testified that plaintiff was "meeting all of her stats." Yet DHHS contends that, following the contempt conviction, plaintiff was no longer qualified for her position considering Judge Brown's request that she not appear before him.

This argument raises the question of whether the employer's legitimate, nondiscriminatory reason for the termination should be considered in determining whether the plaintiff satisfied the "qualified" prong of the prima facie case. While we are not aware of any Michigan caselaw addressing this issue, the Sixth Circuit Court of Appeals has held that "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v Catholic Diocese of Toledo*, 206 F3d 651, 660-661 (CA 6, 2000).[12] We find this approach persuasive. As the Sixth Circuit reasoned, consideration of the employer's nondiscriminatory reason at the outset "improperly import[s] the later stages of the *McDonnell Douglas* inquiry into the initial prima facie stage." *Id*. at 660.

Further, it is unclear that DHHS's proffered reason actually rendered plaintiff unqualified for her job. While testifying in court was part of plaintiff's job duties, DHHS has not argued that Judge Brown had actual authority to forbid plaintiff from appearing in his courtroom in the future. Moreover, Judge Brown's e-mail was not a court order, but a request. For all the record shows, then, plaintiff could still have appeared in front of Judge Brown, albeit to his possible displeasure. Moreover, plaintiff testified that there was another judge and a magistrate who also heard foster care cases in St. Clair County, and that plaintiff appeared more often before the magistrate than before Judge Brown. Plaintiff also testified that she could have performed her job in "any [other]

---

[11] "[T]he elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand." *Hazle*, 464 Mich at 463 n 6. Considering that *Lytle*, 458 Mich 153, was also a termination case, we will follow the formulation of the prima facie case stated there.

[12] "We are not bound by federal precedent interpreting analogous questions under Title VII of the federal Civil Rights Act, but that caselaw is generally considered persuasive." *White v Dep't of Transp*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349407); slip op at 6.

county." Anderson testified that she also "felt that Ms. Williams could still do the job." And plaintiff was only required to show that she was minimally qualified.

For these reasons, we conclude that plaintiff satisfied the "qualified" prong.

## B. PRIMA FACIE CASE—INFERENCE OF DISCRIMINATION

Next, DHHS argues that plaintiff has not presented evidence giving rise to an inference of unlawful discrimination.

There are "multiple ways of proving the ultimate question of discrimination in a circumstantial evidence case." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607-608; 886 NW2d 135 (2016). Here, plaintiff relies on her testimony that white employees at the St. Clair County DHHS office were disciplined less harshly than African-Americans as well as the racist behavior displayed by some of the employees and managers at that office.

DHHS argues that evidence regarding the discipline of white employees has no probative value because those employees were not similarly situated to plaintiff. "An employer's differing treatment of employees who were similar to the plaintiff in all relevant respects, except for their race, can give rise to an inference of unlawful discrimination." *Hecht*, 499 Mich at 608. However, for this type of evidence to *alone* give rise to such an inference, "the 'comparable' employees must be 'nearly identical' to the plaintiff in all relevant respects." *Id.* (citation omitted). In terms of the seriousness of the offenses committed by the other employees, both parties cite caselaw holding that the infractions must be of "comparable seriousness." See e.g., *Wright v Murray Guard, Inc*, 455 F3d 702, 710 (CA 6, 2006) (emphasis and citation omitted).

Plaintiff testified about several white employees who violated work rules and were not fired. These included two employees who had daycare fraud "proven against them," and were simply required to "pay the money back." In contrast, plaintiff was given a five-day suspension in 2014—reduced from termination after arbitration—for sharing her PIN in a manner that allowed a caregiver to improperly obtain Department Child Care benefits. And plaintiff can use evidence of older conduct as "background evidence," even if that conduct is no longer actionable. *Campbell v Human Servs Dep't*, 286 Mich App 230, 238; 780 NW2d 586 (2009) (holding "acts occurring outside the limitations period, although not actionable, may, in appropriate cases, be used as background evidence to establish a pattern of discrimination"). Considering the substantial similarities and the drastically different responses by DHHS, these prior incidents have probative value.

Plaintiff also testified that one employee who showed up to work intoxicated many times was simply given rides home, and another who was caught hunting or fishing without a license was moved to another job. Plaintiff did not testify what positions these coworkers held, and gave only wide date ranges, if any. Given the dissimilarities and the vague information provided by plaintiff, we agree with DHHS that these incidents have little probative value.

However, plaintiff also relies on DHHS's decision to merely demote Anderson after she improperly disclosed confidential information about the child protection case underlying plaintiff's contempt of court conviction that was then made public. This incident is of comparable severity as Anderson agreed that a breach of confidentially could result in termination. And it is

particularly compelling considering that Anderson's misconduct related to the same child protection case that resulted in plaintiff's termination.

Assuming plaintiff's "similarly situated employee" evidence does not create an inference of discrimination by itself, other circumstantial evidence may be considered when evaluating "the ultimate question of discrimination." *Hecht*, 499 Mich at 609 (holding that plaintiff is not limited to the "similarly situated" method to show circumstances suggesting race discrimination).

As noted, plaintiff offered evidence suggesting there was a significant discriminatory atmosphere toward African-American workers at the St. Clair County DHHS office. Background evidence of racial discrimination, harassment, or slurs can support an inference of intentional discrimination in at least some circumstances. The United States Supreme Court has stated that a plaintiff can establish pretext in an intentional discrimination case by presenting "evidence of respondent's past treatment of petitioner, including the instances of the racial harassment which she alleges . . . ." *Patterson v McLean Credit Union*, 491 US 164, 188; 109 S Ct 2363; 105 L Ed 2d 132 (1989), quoted in *Hazle*, 464 Mich at 469. In that case, the racial harassment constituted staring, disparate assignment of tasks, disparate criticism, and a discriminatory statement, all committed by a supervisor. *Patterson*, 491 US at 178.

Other federal courts have addressed the use of background evidence of discrimination to create an inference of discrimination at the prima facie case stage. For instance, the Sixth Circuit Court of Appeals has held that:

> Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add "color" to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff. [*Rachells v Cingular Wireless Employee Servs, LLC,* 732 F3d 652, 665 (CA 6, 2013) (holding that the plaintiff had established a prima facie case based in part on such evidence) (citations omitted).

Further,

> "evidence of a . . . discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment." Thus, even the conduct of a nondecisionmaker may be probative of whether an adverse action directed at a plaintiff was racially motivated. [*Id.* (citation omitted).]

The court identified the following factors to determine whether evidence of a discriminatory atmosphere is probative of intentional discrimination:

> "the [actor]'s position in the [employer's] hierarchy, the purpose and content of the [conduct], and the temporal connection between the [conduct] and the challenged

employment action, as well as whether the [conduct] buttresses other evidence of pretext." [*Id*. (citations omitted).]

The Michigan Supreme Court has outlined similar factors to determine whether discriminatory remarks constitute direct evidence of bias or are merely "stray remarks" that should be excluded from evidence:

> Factors to consider in assessing whether statements are "stray remarks" include: (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision. [*Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 136 n 8; 666 NW2d 186 (2003).]

Applying the "stray remarks" framework, the factor weighing most strongly against consideration of plaintiff's background evidence is that none of the evidence was "related to the decision-making process" resulting in plaintiff's termination. Much, but not all, of plaintiff's evidence could also be characterized as "vague and ambiguous"—for example, Anderson's spraying of air freshener or body spray, which could be taken as either racially discriminatory or an innocent misunderstanding. More generally, some of plaintiff's testimony is vague on who made the racist statement or act and their position. For example, plaintiff could not identify who was behind the blackbird imagery or who made the birds crow racial slurs.

On the other hand, some of the conduct is linked to Walbecq, who conducted DHHS's investigation of the contempt of court incident. Plaintiff testified that Walbecq said African-American homes smelled like fried chicken. Walbecq told plaintiff to smile to "soften up [her] expression." Howell testified that Walbecq refused to act when confronted about a manager referring to nonwhite managers as "colored people" at an event Walbecq organized at which only white managers were present. See *Rachells*, 732 F3d at 665 (considering a decisionmaker's "non-responsiveness to . . . complaints that . . . evaluations were racially motivated" as evidence of "whether a discriminatory atmosphere existed"). Howell also confirmed that Walbecq sent her a picture of a monkey that Howell found offensive.

Further, there is strong evidence Walbecq had influence in plaintiff's termination. Walbecq conducted the investigation finding that plaintiff had violated several DHHS work rules. Anderson's testimony indicates that it was Weston, the St. Clair County Director, and Walbecq, the St. Clair County Program Manager, who made the recommendation to DHHS's Human Resources department to terminate plaintiff. Any doubt of Walbecq's involvement in the decision to terminate was removed by DHHS's answers to interrogatories stating that Walbecq "conducted the investigation and recommended termination of Plaintiff." This is sufficient evidence to create a material question of fact on whether Walbecq influenced the decision to terminate plaintiff's employment. See *Harrison v Olde Fin Corp*, 225 Mich App 601, 608 n 7; 572 NW2d 679 (1997) (holding the plaintiff "established a question of material fact regarding whether" a "decision was influenced by a person" when there was testimony the decisionmaker "consulted with and considered" that person's views).

With regard to whether the incidents were "close in time" to plaintiff's firing, the specific timing of many of the events is vague. The background evidence of racial animus offered by plaintiff spans at least a decade, from some time before 2008 or 2009—when plaintiff moved "upstairs"—to about the time of plaintiff's termination in 2016. Older evidence, even if "not actionable, may, in appropriate cases, be used as background evidence to establish a pattern of discrimination." *Campbell*, 286 Mich App at 238, but older evidence is less likely to be probative of the reasons for plaintiff's termination.

Some of plaintiff's evidence does concern relatively recent conduct. Plaintiff testified that the blackbirds continued to appear, though they were no longer crowing racial slurs, until soon after Anderson became plaintiff's supervisor, which was in approximately February 2016. Plaintiff testified that she was bypassed for overtime in approximately October 2015. Plaintiff testified that Anderson began spraying air freshener whenever plaintiff was in Anderson's office after plaintiff reported Walbecq's "fried chicken" remark to Anderson. The strong implication is this occurred after Anderson became plaintiff's manager in approximately February 2016. The use of nicknames for plaintiff, as well as plaintiff being told to smile on the phone so she would not sound like an "angry black woman," were repeated throughout plaintiff's time at the St. Clair office.

Finally, the evidence of a discriminatory atmosphere, taken as a whole, appears much more reflective of a pattern than of isolated incidents. Viewed in the light most favorable to plaintiff, there is evidence of repeated use of racially discriminatory comments, imagery, and nicknames against African-American workers in the St. Clair County DHHS office, and evidence that management generally downplayed these issues, along with evidence of negative employment consequences, such as being bypassed for overtime, and workers of color not being given questions ahead of time for a position.

In sum, we conclude that the evidence of a discriminatory atmosphere in this case can be considered as probative circumstantial evidence of whether plaintiff was terminated for discriminatory reasons. And the totality of plaintiff's evidence reasonably suggests a discriminatory bias behind her termination. Accordingly, she has established a prima face case of discrimination.

## C. PRETEXT

"[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Hazle*, 464 Mich at 464. If the employer has offered evidence of a legitimate nondiscriminatory reason for the employment decision, "the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id*. at 465 (quotation marks and citation omitted). A plaintiff can show that the legitimate, nondiscriminatory reason is pretext for discrimination in one of three ways: "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they

were jointly insufficient to justify the decision." *Major v Newberry*, 316 Mich App 527, 542; 892 NW2d 402 (2016).

DHHS has presented evidence that it fired plaintiff for a nondiscriminatory reason—because she misled the court at the permanency planning hearing and Judge Brown asked that she not appear before him in the future. As discussed, plaintiff is collaterally estopped from arguing that there was no factual basis for her criminal contempt conviction. Plaintiff's other argument in support of pretext essentially amount to a contention that her termination was an overly severe consequence, which would not have been imposed on her but for the fact that she is African-American. If she were not African-American, she might have been simply demoted, transferred, or disciplined in some other way.

For the reasons discussed, we conclude that the same evidence supporting a reasonable inference of discrimination also creates a genuine fact issue that the nondiscriminatory reason for plaintiff's firing is pretextual. See *Town*, 455 Mich at 697 ("The proofs offered in support of the prima facie case may be sufficient to create a triable issue of fact that the employer's stated reason is a pretext, as long as the evidence would enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis."). Accordingly, we affirm the denial of summary disposition on the discrimination claim.

## D. RETALIATION

DHHS also argues that the trial court erred by not dismissing plaintiff's claim for retaliation. The CRA states:

> Two or more persons shall not conspire to, or a person shall not:
>
> (a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act. [MCL 37.2701.]

"[T]o establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 161; 934 NW2d 665 (2019) (quotation marks and citation omitted).

Plaintiff argues only that she engaged in protected activity by filing EEOC complaints, and that her termination was an adverse employment action. Plaintiff makes no attempt to address the knowledge and causation elements of the prima facie case. The record contains one EEOC complaint dated March 23, 2015. In her deposition testimony, plaintiff indicated she filed a total of three EEOC complaints. One of the other two was in 2014, and no date was given for the third.

The March 23, 2015 EEOC complaint is dated over a year before the June 27, 2016 permanency planning hearing which gave rise to plaintiff's contempt of court conviction, and 18 months before her October 6, 2016 termination. A "[p]laintiff must show something more than

-11-

merely a coincidence in time between protected activity and adverse employment action." *Garg v Macomb Co Cmty Mental Health Servs*, 472 Mich 263, 286; 696 NW2d 646 (2005), amended on den of reh 473 Mich 1205 (2005). Plaintiff has not offered any evidence to suggest a connection between the filing of her complaints and her termination. Plaintiff cannot rely solely on "temporal proximity"—in the form of a gap of more than a year—to demonstrate a causal connection between her EEOC complaints and her termination. See *id.* Plaintiff has failed to make out a prima facie case of retaliation, and so we reverse the denial of summary disposition on this claim.

## III. CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs may be taxed under MCR 7.219(F) as neither party has prevailed in full.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello