*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* JOHN R. ADAMS TRUST.

---

HIGHPOINT COMMUNITY BANK, Trustee of the JOHN R. ADAMS TRUST,

      Appellee,

v

KRISTENE MOREHOUSE, Trustee of the RUTH A. ADAMS TRUST and Personal Representative of the ESTATE OF RUTH A. ADAMS,

      Appellant/Cross-Appellee,

and

JACKIE LYNN HUGHES,

      Appellee/Cross-Appellant.

UNPUBLISHED
January 27, 2022

No. 354677
Barry Probate Court
LC No. 20-028513-TT

---

JACKIE LYNN HUGHES,

      Plaintiff-Appellant,

v

KRISTENE MOREHOUSE, Personal Representative of the ESTATE OF RUTH A. ADAMS and Trustee to the RUTH A. ADAMS TRUST,

      Defendant-Appellee.

No. 356119
Barry Circuit Court
LC No. 2020-000735-CZ

---

Before: CAMERON, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

These consolidated cases concern the John R. Adams Trust. John's wife, Ruth A. Adams, was a trustee and beneficiary of John's trust; John's daughter, Jackie Lynn Hughes, was a potential beneficiary of the trust. In Docket No. 356119, Hughes appeals the dismissal of her civil claims alleging breach of trust against her stepmother Ruth. In Docket No. 354677, Ruth's sister and personal representative of her estate, Kristene Morehouse, appeals the probate court's ruling that the one remaining piece of property in John's trust would stay titled to the trust. On cross-appeal, Hughes argues that the probate court erred by ruling that Ruth had properly withdrawn all of the other property from the John's trust pursuant to the Spouse's Right provision.

In Docket No. 356119, we reverse the dismissal of Hughes's civil action for failure to file a transfer fee when her circuit court action was removed to probate court. In Docket No. 354677, we affirm the probate court's ruling that the remaining trust property that had not been transferred to Ruth during her lifetime shall stay in John's trust and be managed and distributed according to the trust's terms. We reverse the probate court's ruling that any trust property distributed to Ruth from John's estate pursuant to the Spouse's Right provision was proper when Ruth failed to exercise that right consistent with the trust's unambiguous terms. We remand so that Hughes's civil action may proceed before the probate court.

I. BACKGROUND

In 2005, John Adams created the John R. Adams Trust, naming himself and his wife Ruth as trustees. The trust provided that Highpoint Community Bank (f/k/a Hastings City Bank), would become the successor co-trustee, along with Ruth, upon John's death. John died on November 19, 2005, and was survived by his wife Ruth, as well as his daughter, Hughes.[1] Section 3.3(e) of John's trust granted Ruth, as the surviving spouse, the right to withdraw all trust assets if she filed written evidence exercising that right with the court having domiciliary jurisdiction of John's estate:

(e) **Spouse's Right.** My Spouse shall have the right to receive free from trust all or any portion of the property which otherwise would have been held by Trustee under this Agreement after my death, but only by filing, with the court which has (or would have had if my estate were probated) domiciliary jurisdiction of my estate, a writing evidencing of that right. The writing shall make specific reference to this provision of this Agreement, be signed by my Spouse personally, and shall be filed with the court after my death and not later than 5:00 pm, current local time, one month prior to the initial due date for filing the federal estate tax

---

[1] John was also survived by a son, but he was disinherited from the trust.

return in my estate. Failure of my Spouse to file the writing shall constitute an irrevocable disclaimer of any rights under this paragraph.[2]

Section 3.4 of John's trust provided that upon his spouse's death, any remaining trust property would be held in trust and managed and distributed for the benefit of Hughes and her children.

On April 11, 2006, Ruth timely sought to exercise the Spouse's Right by executing a document that provided the following:

> I exercise my right to withdraw all of the property of the [John R. Adams] Trust, and I direct the Trustees to transfer the property to me or as I may otherwise direct. If I should die before the transfer has been completed, I direct the Trustees to transfer the property that was not transferred while I was alive to the Trustees of the Ruth A. Adams Trust No. 1 dated January 4, 2005.

Barry Probate Court was the court with domiciliary jurisdiction over John's estate. However, the executed document stated that Ruth was not filing the document with that court "because my lawyers have advised me that the Probate Court may not accept this for filing because no estate or trust proceedings are pending in that Court." Upon executing this document, Ruth and Highpoint, as co-trustees, transferred assets held in John's trust to Ruth, including three parcels of real property located in Ingham County. A letter dated April 12, 2006, was purportedly sent from Ruth's attorney to Hughes's divorce attorney informing that Ruth was considering whether to withdraw all of the trust assets pursuant to section 3.3(e) and that "there does not appear to be any substantial tax advantage" to continuing John's trust.

Ruth died on October 21, 2019. She was unmarried and without children at the time of her death. Her sister, Morehouse, was appointed by the court to serve as personal representative of Ruth's probate estate. Morehouse was also trustee of the Ruth A. Adams Trust,[3] as well as the primary beneficiary. Ruth's trust left $5,000 to Hughes and her children.

On January 8, 2020, Hughes submitted a statement and proof of claim against Ruth's estate and trust for $590,000, the alleged value of the three Ingham County real estate parcels transferred to Ruth from John's trust. Morehouse disallowed each claim.

---

[2] Section 3.3(e) also provided:

> My Spouse may exercise this right to receive property free from trust if, and only if, the property, or the remaining property, which Trustee is to continue to hold in trust under this Agreement would be free from federal estate tax in my Spouse's estate if my Spouse were to die immediately after exercise of the right.

There is no dispute that this condition was satisfied.

[3] Unless otherwise specified, all references to "the trust" or trust assets or property refer solely to John's trust.

On February 28, 2020, Hughes filed a complaint against Morehouse in Ingham Circuit Court for allowance of a disallowed claim.[4] Hughes alleged that, by failing to file a written document with the probate court as required by section 3.3(e), Ruth failed to properly exercise the Spouse's Right, and that she therefore committed a breach of trust by transferring property from John's trust to herself. Hughes sought return of the trust assets or the value thereof that had been distributed to Ruth.

On May 5, 2020, Highpoint filed a petition in Barry Probate Court seeking instruction regarding the disposition of the one remaining asset titled to John's trust, a parcel of real estate located in Nashville, Michigan.[5] Highpoint specifically requested instruction from the probate court on the following questions regarding the Spouse's Right:

> Whether despite its lack of filing with the Court, the Exercise of Spouse's Rights dated April 11, 2006 complies with Section 3.3(e) of the John R. Adams Trust that (i) the distributions from the John R. Adams Trust to Ruth A. Adams following his death were proper and (ii) the assets remaining in the John R. Adams Trust after the payment of expenses of administration ought to be distributed to Kristene Morehouse, as Trustee of the Ruth A. Adams Trust.

Morehouse and Hughes received notice of the petition as interested persons and filed briefs in response to Highpoint's petition.

Back in the civil action, on June 9, 2020, Morehouse moved for summary disposition under to MCR 2.116(C)(7) (statute of limitations), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact), in lieu of answering Hughes's complaint. Morehouse asserted that the removal of property from John's trust was proper given that Ruth timely exercised the Spouse's Right and was acting on the advice of her legal counsel when she chose not to file a written document with the probate court. Morehouse also argued that Hughes's complaint was untimely because the complaint was actually an action against a trustee and subject to a five-year limitations period, citing MCL 700.7905(3). She also argued that the complaint was barred by the doctrine of laches because Hughes received notice of Ruth's exercise of the Spouse's Right through her attorney over 13 years ago. Alternatively, Morehouse requested that the complaint should be removed to the Barry Probate Court pursuant to MCL 700.1303(2) and (3) because of the petition regarding John's trust that was pending before that court.

In response, Hughes requested summary disposition pursuant to MCR 2.116(I)(2) (nonmoving party entitled to judgment), asserting that there was no genuine issue of material fact that Ruth improperly took title to trust property because she did not file a written document with the Barry Probate Court as required by the Spouse's Right provision. Hughes also argued that her action satisfied the limitations period set forth in MCL 700.7905(3) and that laches did not apply

---

[4] The lower court case no. was 2020-00141-CZ when this case was in the Ingham Circuit Court. After the case was removed to the Barry Probate Court, the case no. was changed to 2020-00735-CZ.

[5] LC No. 20-028513-TT.

because she never saw the April 19, 2006 letter allegedly sent to her attorney. Hughes opposed removal of her action to Barry Probate Court.

The first hearing in the probate proceedings was held on June 10, 2020. As a preliminary matter, the probate court denied Hughes's request that the case be transferred to Ingham Circuit Court and consolidated with her civil action. As to the question presented by Highpoint's petition, the probate court did not expressly discuss whether Ruth validly exercised the Spouse's Right given the failure to file a writing with the court. However, the court concluded that the real estate that remained titled to John's trust would be distributed to Hughes according to the terms of the trust.[6]

After additional briefing and a hearing on August 12, 2020, the probate court signed a final order that provided that the Nashville real property would "remain titled to the Trust to be held, managed, and distributed by Trustee pursuant to the Trust's terms" and that "[a]ny principal or income of the Trust that was distributed to or for the benefit of Ruth A. Adams during her lifetime, whether pursuant to Section 3.3(e) of the Trust or otherwise, shall remain with Ruth A. Adams to be hers free and clear of the trust."

In the civil action in Ingham Circuit Court, the parties submitted supplemental briefing regarding the status of the probate proceedings. On October 21, 2020, the circuit court issued an opinion and order declining to rule on Morehouse's motion for summary disposition and, concluding that the action would be simplified if the case were removed to the Barry Probate Court, it so ordered pursuant to MCL 700.1303(2) and (3).

On November 3, 2020, the Barry County Clerk sent Hughes a letter notifying her that the case had been transferred and that she should address any new filings to the Barry County Clerk. The parties did not submit any new filings to the case and, on December 17, 2020, the Barry Probate Court dismissed the case because "defendant's attorney failed to pay the transfer fee of $150.00 per MCR 2.223(c)(1) within 28 days of filing/transfer to the 5th Circuit Court."[7] On January 14, 2021, the Barry Probate Court issued an order denying Hughes's motion to set aside the dismissal, reasoning that "[t]he dispositive issues in the Circuit Court case proposed for transfer have already been decided against plaintiff and appealed, therefore the late attempt to remedy plaintiff's late filing fee is again, Denied."

## II. DISCUSSION

---

[6] Following the hearing, the parties disputed whether the proposed order prepared by Highpoint conformed with the court's ruling. Much of the confusion appears attributable to the probate court confusing the three Ingham County parcels that had been distributed to Ruth from John's trust with the one remaining parcel titled to the trust that was located in Nashville, Michigan. An additional hearing was held on August 12, 2020, where the probate court clarified that it was holding that the Nashville property would remain titled to the trust.

[7] We presume the probate court mistyped "defendant" instead of "plaintiff."

## A. DOCKET NO. 356119—DISMISSAL FOR FAILURE TO PAY TRANSFER FEE

We will first address Hughes's argument that the probate court erred by dismissing her civil action. We conclude that the dismissal was erroneous under MCR 2.223 because it was never established that Ingham Circuit Court was an improper venue for the action.[8]

MCR 2.223(A) states in relevant part:

If the venue of a civil action is improper, the court

(1) shall order a change of venue on timely motion of a defendant, or

(2) may order a change of venue on its own initiative with notice to the parties and opportunity for them to be heard on the venue question.

If venue is changed pursuant to this court rule, "[t]he plaintiff must pay to the receiving court within 28 days of the date of the transfer order the applicable filing fee, costs, and expenses as ordered by the transferring court or the receiving court will dismiss the action."

Morehouse does not argue that Ingham Circuit Court was an improper venue for Hughes's action.[9] Nor did the circuit court reach that conclusion. Instead, the circuit court determined that it had concurrent jurisdiction with Barry Probate Court over Hughes's claims and exercised its discretion to remove the case to Barry Probate Court under MCL 700.1303(2) and (3), which provide:

> (2) If the probate court has concurrent jurisdiction of an action or proceeding that is pending in another court, on the motion of a party to the action or proceeding and after a finding and order on the jurisdictional issue, the other court may order removal of the action or proceeding to the probate court. If the action or proceeding is removed to the probate court, the other court shall forward

---

[8] "This Court reviews a trial court's decision to dismiss an action under an abuse of discretion standard." *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995). "An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes. A trial court necessarily abuses its discretion when it makes an error of law." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018) (citation and alteration omitted). We review de novo the interpretation and application of court rules and statutes. *State Farm Fire & Casualty Co v Corby Energy Servs, Inc*, 271 Mich App 480, 483; 722 NW2d 906 (2006); *Webb v Holzheuer*, 259 Mich App 389, 391; 674 NW2d 395 (2003).

[9] Morehouse has declined on appeal to take any position on whether venue or jurisdiction was proper in Ingham Circuit Court, or whether the Barry Probate Court properly exercised its discretion to dismiss the complaint for failure to pay a transfer fee.

to the probate court the original of all papers in the action or proceeding. After that transfer, the other court shall not hear the action or proceeding.

(3) The underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's, a protected individual's, a ward's, or a trust estate by consolidating the probate and other related actions or proceedings in the probate court.

We are not aware of any caselaw holding that a discretionary removal to probate court pursuant this statute equates to a conclusion that venue was improper in the other court, nor do we see a basis to reach that conclusion. And in the absence of a finding by the circuit court that it was an improper venue for the action,[10] there was no basis under MCR 2.223 for Barry Probate Court to impose a filing or transfer fee against Hughes. Because the dismissal rested on an error of law, it necessarily constitutes an abuse of discretion. See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 208; 920 NW2d 148 (2018).

Morehouse nonetheless argues that the dismissal of Hughes's civil action alleging a breach of trust against Ruth should be affirmed because the underlying issue, i.e., whether the distributions made to Ruth from John's trust were proper, was already decided against Hughes by the probate court. Morehouse relies on the doctrine of collateral estoppel, which "bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). Even assuming all other elements of collateral estoppel are met in this case, however, a decision is not final for purposes of collateral estoppel until all appeals have been exhausted. *Id*. The probate court's ruling regarding the application of John's trust is the subject of the appeal and cross-appeal in Docket No. 354677, which we turn to next.

## B. DOCKET NO. 354677—PROBATE COURT'S RULING ON THE PETITION FOR INSTRUCTION

Morehouse argues that the probate court erred by ruling that John's trust retained title to the Nashville property. She reasons that Ruth properly exercised the Spouse's Right and that title to the property did not need to be transferred to Ruth during her lifetime. On cross-appeal, Hughes argues that the probate court erred by ruling that the trust property distributed to Ruth during her lifetime remained free and clear of the trust when she failed to file a written document with the court evidencing her exercise of the Spouse's Right.

---

[10] We decline to address whether Ingham Circuit Court was a proper venue for Hughes's action or if that court had concurrent jurisdiction with the probate court. Those issues have not been briefed by the parties, and even if we were to determine that venue was improper or there was a lack of jurisdiction, we would not affirm the dismissal but rather remand for the probate court to grant Hughes the opportunity to pay the transfer fee because she did not have prior notice that MCR 2.223 applied in this case.

"We review de novo a probate court's construction and interpretation of the language used in a will or a trust." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012). "In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008). "[A] court must enforce the plain and unambiguous terms of a trust as they are written." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015).

As noted, the Spouse's Right contained in section 3.3(e) of John's trust provided that Ruth would receive all trust property after John's death "but only by filing with the court which was (or would have had if my estate were probated) domiciliary jurisdiction of my estate, a writing evidencing exercise of that right." Section 3.3(e) further provided that "[f]ailure of my Spouse to file the writing shall constitute an irrevocable disclaimer of any rights under this paragraph."

Although Ruth executed a document in an attempt to exercise the Spouse's Right, she did not file a writing to that effect with the probate court as required by John's trust. And per the trust's unambiguous terms, this failure constituted "an irrevocable disclaimer of any rights under" section 3.3(e). Accordingly, Ruth had no right to receive trust property pursuant to this provision and her estate has no claim for any remaining trust property. We therefore affirm the probate court's ruling that any property remaining in John's Trust, i.e., the Nashville property, shall be distributed to Hughes and her children according to the terms of the Trust.[11] However, Ruth's failure to validly exercise the Spouse's Right compels us to reverse the probate court's ruling that trust property was properly distributed to Ruth during her lifetime pursuant to the Spouse's Right.[12] Morehouse has provided no persuasive argument or authority as to how those distributions can be deemed proper given the lack of a court filing evidencing Ruth's exercise of the Spouse's Right.

## C. REMAND PROCEEDINGS

Because we are reversing the probate court's ruling that trust assets were properly transferred to Ruth during her lifetime, Hughes's civil action based on those transfers is not precluded by the doctrine of collateral estoppel and therefore it shall proceed before the probate court, where it was removed before it was erronesouly dismissed. We decline to address Morehouse's arguments that Hughes's claims are barred by the applicable statute of limitations and the doctrine of laches. Morehouse may raise those issues before the probate court to decide in the first instance.

---

[11] The probate court did not address the effect of Ruth's failure to comply with the trust's terms, but we may affirm a lower court when it reaches the correct result for different reasons. See *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 345; 941 NW2d 685 (2019).

[12] Morehouse notes that the probate court did not necessarily rule that the trust property was properly distributed pursuant to the Spouse's Right because the probate court's order referred to property transferred "pursuant to Section 3.3(e) of the Trust *or otherwise* . . . ." (Emphasis added). However, Morehouse does not assert that Ruth in fact received trust assets pursuant to a different trust provision. Further, the amount of trust property that Ruth would have received absent the Spouse's Right seemingly goes to damages if Hughes's action is not found to be time barred.

## III.  CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro